IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEFFREY BISHOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-CV-92 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Jeffrey Bishop ("Bishop") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Bishop asserts that the ALJ erred by failing to properly evaluate and weigh the opinions of two mental health consultative examiners.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). The parties have fully briefed all issues and the case is now ripe for decision. I have held a hearing and have reviewed the record, the applicable law, and the papers submitted. I conclude that the ALJ failed to adequately explain the weights he assigned to the mental health evaluators' opinions. As such, I **GRANT in part** Bishop's Motion for Summary Judgment (Dkt. No. 16), and **DENY** the Commissioner's Motion for Summary Judgment. Dkt. No. 19. This case shall be **REMANDED** to the ALJ for further consideration consistent with this memorandum opinion.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Bishop failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bishop filed for DIB on March 1, 2011, claiming that his disability began on December 2, 2010.[2] R. 382. Bishop claimed that he was disabled due to bi-polar disorder, migraine headaches, and attention deficit hyperactivity disorder. R. 386. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 81–98; 101–20. On January 22, 2013, ALJ Jeffrey Schueler held a hearing to consider Bishop's disability claim. R. 28–78. Bishop was represented by an attorney at the hearing, which included testimony from vocational expert Ashley Wells. Id. On February 1, 2013, the ALJ entered an opinion denying Bishop's application for benefits. R. 121–32. Bishop requested review by the Appeals Council,

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2)
.
[2] Bishop's date last insured is September 30, 2015. R. 382. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

and on October 9, 2013, the Appeals Council issued a notice remanding Bishop's case to the ALJ for further consideration. R. 137–41. Specifically, the Appeals Council directed the ALJ to evaluate Bishop's mental impairments further, consider Bishop's RFC "during the entire period . . . and provide rationale with specific references to evidence of record in support of assessed limitations . . . evaluate the nontreating source opinion . . . explain the weight given to such opinion evidence" and, if necessary, expand the record through the vocational expert to explain the extent the identified impairments have eroded Bishop's occupational base. R. 139. The ALJ held a second hearing on April 17, 2014 at which Bishop and vocational expert Dr. Gerald Wells testified. R. 55–78.

On May 23, 2014, the ALJ entered his decision analyzing Bishop's claim under the familiar five-step process[3] and denying his claim for benefits. R. 11–22. The ALJ found that Bishop suffered from the severe impairments of attention deficit hyperactivity disorder, depression, and anxiety. R. 14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Bishop retained the RFC to perform work at all exertional levels with non-exertional limitations, including performing only simple, routine, repetitive tasks in a low-stress job with only occasional interaction with coworkers or the public.[4] R. 16. Bishop should be expected to be

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by

3

off-task up to ten percent of a workday in addition to his regularly scheduled breaks. Id. The ALJ determined that Bishop could not return to his past relevant work as a census enumerator, medical supply technician, apartment maintenance worker, or a maintenance mechanic (R. 20), but that Bishop could work at jobs that exist in significant numbers in the national economy, such as night cleaner, laundry folder, and office helper. R. 21. Thus, the ALJ concluded that Bishop was not disabled. R. 22. On January 7, 2015, the Appeals Council denied Bishop's request for a review and this appeal followed. R. 1–5.

## ANALYSIS

Bishop testified that he lost his job of twenty-five years working as a maintenance mechanic at a fiber plant in 2010. R. 43–44. After that he worked some short-term, odd jobs, but has been suffering from symptoms of anxiety and depression since losing his job. R. 37–43. Though the record reflects Bishop sought some treatment for his symptoms, he mainly received sporadic mental health care from a free clinic. R. 61. The free clinic records reveal diagnoses of bipolar disorder, attention deficit disorder, and depression. R. 581. See also, e.g., R. 602, 603, 605. Bishop received prescriptions for medication and counseling to treat his symptoms. Id.

Because there was a lack of objective medical evidence available upon Bishop's initial application, the Disability Determination Service referred him to Tonya McFadden, Ph.D., for a consultative psychological examination. R. 17. Bishop independently arranged another psychological consultative examination with Pamela S. Tessnear, Ph.D. R. 651–65. Bishop argues that the ALJ's treatment of these examiners' opinions was deficient, and that this error requires remand.

### Non-Treating Psychologists' Opinions

---

others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

Bishop argues that the ALJ erred by failing to evaluate and properly credit the opinions of the two consultative examiners and argues that in so doing, the ALJ failed to remedy the deficiencies the Appeals Council identified when it remanded the case for further consideration. Pl.'s Br. Supp. Summ. J. 4. Essentially, Bishop contests the ALJ's decision to give the doctors' opinions only "some" weight without adequate explanation for that decision. Id. at 12, 13.

The ALJ initially gave Dr. McFadden's opinion "great weight" in his first opinion, but gave this same opinion only "some weight" in his second opinion. Pl.'s Br. Supp. Summ. J., 7–8. Bishop argues that the ALJ's failure to explain why the same opinion from Dr. McFadden received disparate treatment in separate opinions constitutes error. To the extent Bishop argues that this was error because the ALJ did not comply with the Appeals Council's remand order, this court is without jurisdiction to address that argument. A "remand order constitutes an intermediate agency action and not the final decision of the Commissioner." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *4 (M.D.N.C. Jan. 15, 2014) (citing Bass v. Astrue, No. 1:06CV591, 2008 WL 3413299, at *4 (M.D.N.C. Aug. 8, 2008)); see also Peckham v. Astrue, 780 F. Supp. 2d 1195, 1203 (D. Kan. 2011); Brown v. Comm'r, No 1:08CV183, 2009 WL 465708, at *5 (W.D. Mich. Feb. 24, 2009) (holding the same). The issue for this court to review is whether "the Commissioner has applied the correct legal standards and whether his findings are supported by substantial evidence." Bass, 2008 WL 3413299, at *4. The Bass court also noted that when the Appeals Council determined that there was no basis for review of the ALJ's decision after remand, it "implicitly found that the ALJ opinion complied with its remand order." Id., at *4 n. 2.

This case is similar to Bass. After the ALJ's first opinion, the Appeals Council issued a remand order vacating the hearing decision and returning the case to the ALJ for further

5

consideration consistent with the order. R. 138–40. The ALJ held another hearing, issued another opinion, and Bishop again petitioned the Appeals Council for review. R. 6–7. Bishop's request was denied (R. 1–5), thus making the second ALJ opinion the final decision from which Bishop has appealed to this court.[5] Whatever the ALJ did or did not do in his first opinion is a nullity, as it has been vacated by the Appeals Council. R. 138. It is the duty of this court to evaluate the ALJ's final opinion to determine whether substantial evidence supports that decision.

Consultative Examiners' Opinions

    A. Dr. McFadden's Opinion

Dr. McFadden evaluated Bishop on June 13, 2011. Her report appears to generally adopt Bishop's self-reported symptoms and limitations that he had good days and bad days, and that he felt depressed approximately four days per week. R. 522. Bishop stated that he worried obsessively, experienced mood fluctuations including periods of euphoria, and that he did not experience panic attacks or have thoughts of suicide. Id. Dr. McFadden's observations include notes that Bishop appeared his stated age of 49, was adequately groomed, pleasant, and

---

[5] Bishop relies upon Deane v. Barnhart, No. 3:06CV00016, 2006 WL 2787052, at *2 (W.D. Va. Sept. 26, 2006) to support his argument that the ALJ's failure to comply with the Appeals Council Order is reversible error. However, in that case, it is unclear whether the Appeals Council order vacated the original ALJ opinion. The court also noted that the Appeals Council remanded the case "because the Law Judge who purportedly authored the February 23, 2001 decision was not on active duty at the time the decision issued." Id. This opinion also did not address the issue of jurisdiction over the first ALJ opinion, as the court did in Bass. Thus the Deane case is distinguishable from Bishop's case. Finally, the bulk of the cases to address this issue have aligned with Bass, finding that the court is without jurisdiction to address whether an ALJ's opinion did or did not conform to the remand order. See, e.g., Balde v. Astrue, No. 10-C-0682, 2011 WL 3419371, at *17 (E.D. Wis. Aug. 4, 2011); Poyck v. Astrue, 414 Fed. App'x 859, 861 (7th Cir. 2011) ("The question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence."); Fajardo v. Astrue, No. CV 08–01615, 2010 WL 273168, at * 3 (C.D.Cal. Jan. 14, 2010) ("[R]egardless of whether the ALJ fully complied with the Appeals Council's remand order, judicial review is limited to the question whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards."); Dishman v. Astrue, No. 4:08–cv–58, 2009 WL 2823653, at *10–11 (E.D. Tenn. Aug. 27, 2009) (collecting cases that reject similar arguments); Brown v. Comm'r, No. 1:08–CV–183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009) ("Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision."). This makes sense, as I am only tasked with reviewing the ALJ's decision for substantial evidence, and not with reviewing the case's procedural history to ensure the agency complies with its internal orders.

cooperative. R. 525. His speech was relevant and coherent and there was no evidence of a distorted thought process, delusions, or hallucinations. Id. He appeared anxious and denied any suicidal or homicidal ideations. Id. After testing, Dr. McFadden reported that Bishop's judgment appeared deficient based on his response to a presented scenario, his concentration was moderately deficient based on two errors in performing the serial-7s test, his immediate memory was normative, and his recent memory was markedly deficient. R. 526. Based on these findings, Dr. McFadden concluded that Bishop had moderately deficient concentration, periods of depression with reports of intermittent periods of euphoric mood, and excessive worry. Id. She further concluded that he

> may have interruptions in his ability to perform simple and repetitive tasks which may require additional supervision. It is unlikely that he could successfully execute detailed or complex tasks. He may have difficulty interacting with coworkers and with the public. It is suspected he would have difficulties dealing with the usual stressors encountered in competitive work.

R. 527.

Bishop argues that the ALJ "failed to provide a decisionally adequate explanation for the treatment of Dr. McFadden's opinions," (Pl.'s Br. Supp. Summ. J., 9) because the ALJ merely assigned "some" weight to Dr. McFadden's opinion but then failed to explain what portions of the opinion warranted only "some" weight and failed to explain a rationale for assigning the weight he did. Id. at 10.

In general, the ALJ must evaluate every medical opinion in a claimant's file along with the rest of the record. 20 C.F.R. § 404.1527(b),(c). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." Love–Moore v. Colvin, No. 7:12–CV–104–D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing Hill v. Astrue, 698 F.3d 2253, 1159–60 (9th Cir. 2012);

Bowen v. Comm'r, 478 F.3d 742, 747, 750 (6th Cir. 2007); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)). In considering these opinions, the ALJ is required to consider the examining relationship, the treatment relationship, the opinion's supportability based on the record evidence, consistency with the record, specialization, and other factors. 20 C.F.R. § 404.1527(c), (e)(2)(ii). To determine whether substantial evidence supports the ALJ's decision, a reviewing court must be able to understand how the ALJ analyzed these opinions, assigned them weight, and to what extent he or she incorporated any limitations into an RFC. This analysis is part of the logical bridge-building an ALJ must do when crafting an opinion. As the Fourth Circuit recently reiterated in Monroe v. Colvin, the opinion must contain "the specific analysis that would allow for meaningful review." Monroe v. Colvin, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016).

In his opinion, the ALJ summarizes Dr. McFadden's findings, including her conclusion that Bishop would likely be "unable to successfully execute detailed or complex tasks, may have difficulty interacting with co-workers and the public, and may have difficulty dealing with the usually stressors encountered in competitive work." R. 17. The ALJ then summarily notes that he gave Dr. McFadden's opinion "some weight . . . for the reasons delineated above." R. 20. However, nowhere "above" (or below or elsewhere in the opinion) does the ALJ explain his decision to afford only "some" weight to Dr. McFadden's opinion or the different portions of her opinion. As Bishop argues, this lack of explanation is "particularly important" in this case because the vocational expert's testimony at the hearing indicated that if a hypothetical person required "additional supervision beyond the orientation period, then they would not be able to do competitive work." R. 74. Though not specifically mentioned in the ALJ's opinion, Dr. McFadden's report concluded that Bishop "may have interruptions in his ability to perform simple and repetitive tasks which may require additional supervision." R. 527. Dr. McFadden

8

also "suspected that [Bishop] would have difficulties dealing with the usual stressors encountered in competitive work." R. 527. In the same vein, the vocational expert testified that a person who has "difficulties dealing with the usual stressors encountered in competitive work" would be precluded from working. R. 74. The ALJ failed to address many of the specific and material conclusions Dr. McFadden made regarding Bishop's ability to work.

In this case, it is simply not possible to look to the ALJ's opinion to determine which portions of Dr. McFadden's report he accepted and why. The ALJ does not compare the report to the medical evidence in the record. He does not mention the report in conjunction with Bishop's credibility. In short, the ALJ did not properly address the portions of the report that – considered in tandem with the vocational expert's testimony – seem to indicate that Bishop may be precluded from gainful employment. Instead, the ALJ summarily gave the opinion "some weight" with little to no explanation as to why or how he made this decision. This failure prevents the court from concluding that substantial evidence supports the ALJ's decision that Bishop was not disabled. Accordingly, I conclude that this case should be remanded for further consideration of the consultative examiner's opinion and for a more fulsome explanation of the ALJ's decision to accept or reject that opinion in whole or in part.

B. Dr. Tessnear's Opinion

Bishop independently arranged another psychological consultative examination with Pamela S. Tessnear, Ph.D. R. 651–65. Dr. Tessnear concluded that Bishop

> has very poor attention and he requires repetition of even simple instructions. He is readily distracted and cannot maintain focus for sustained periods. Though persistence is adequate, his pace is quite slow. He is too anxious for work with the public and is likely to be self-conscious around co-workers. He is able to accept supervision and it is needed for many types of work to keep him on task because of the likelihood that he will begin an activity, lose focus, and not complete it. He should not be given work assignments in which distractions and disrupted attention would have adverse consequences. He has poor ability to handle routine

9

> stressors and does especially poorly with time limits and environmental distractions like noise. Any increase in stress will exacerbate his anxiety. Some work interruptions are possible, due to anxiety.

R. 660.

> The ALJ also gave this opinion "some weight" because
>
> the rather extreme limitations contained therein are not supported by [Dr. Tessnear's] own clinical findings (including the rather innocuous ones concerning concentration and social interaction at the evaluation), the clinical findings recorded by Dr. McFadden, the rather conservative mental health treatment reported by the treating mental health professionals, and the form and substance of the claimant's presentation and testimony at the two hearings.

R. 20. While this explanation is somewhat more fulsome than the reasoning given for the weight assigned to Dr. McFadden's opinion, the analysis still fails to state exactly which "rather extreme limitations" are inconsistent with Dr. Tessnear's clinical findings. Also, the "rather innocuous" findings in Dr. Tessnear's report are surrounded by other, less innocuous findings such as "[h]e is too anxious for work with the public" and the conclusion that supervision "is needed for many types of work to keep [Bishop] on task because of the likelihood that he will begin an activity, lose focus, and not complete it." R. 660. The ALJ discounts Dr. Tessnear's conclusions based on Dr. McFadden's conclusions, while at the same time giving Dr. McFadden's opinions the same amount of weight assigned to Dr. Tessnear's. The ALJ cannot, without at least some explanation, give both opinions the same weight and then arbitrarily adopt the conclusions of one over the other. This is especially true in this case when both doctors concluded that Bishop may require additional supervision and would have difficulty handling normal workplace stressors, which the vocational expert testified might preclude employment. Without some more explanation and specific analysis, I am unable to determine whether the ALJ's assessment of the medical opinions and their impact on the resulting RFC are supported by substantial evidence.

10

Accordingly, remand is appropriate.

## CONCLUSION

For the foregoing reasons, I will enter an order **REMANDING** this case to the ALJ for further proceedings conforming to this memorandum opinion.

Entered: August 2, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge